# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JASMINKA DUBRIC,<br><br>              Plaintiff,<br><br>    vs.<br><br>A CAB, LLC et al.,<br><br>              Defendants. | 2:15-cv-02136-RCJ-CWH<br><br>**ORDER** |

This case arises out of Plaintiff Jasminka Dubric's ("Dubric") allegations that the owner of her former employer A Cab, LLC ("A Cab") sexually harassed her and touched her in an offensive manner. In response, A Cab's owner Creighton J. Nady ("Nady") filed a counterclaim against Dubric for defamation. (ECF No. 29.) Now pending before the Court is the Motion for Summary Judgment of Defendants A Cab and Nady. (ECF No. 38). For the reasons given herein, the Court denies the Motion.

## I.    FACTS AND PROCEDURAL BACKGROUND

Plaintiff Jasminka Dubric began working for A Cab on March 20, 2001. (Compl. ¶ 8, ECF No. 1.) Dubric alleges that from the beginning of her employment until May 26, 2015, Nady, the owner of A Cab, "made comments about Plaintiff's appearance and body" and hugged and touched her without permission. (*Id.* at ¶ 10.) Dubric did not complain because she feared losing her job. (*Id.*) Dubric alleges that in February 2015, Nady "grabbed her face and forcefully

kissed her on the mouth." (*Id.* at ¶ 12; Dubric Dep. 49:1–50:16, ECF No. 40-2.) On May 26, 2015, following a meeting to discuss Dubric's company-provided cell phone, Nady and Dubric shook hands, at which time Nady grabbed Dubric's arm, pulled her toward him, and attempted to kiss her on the lips; however, Nady ended up kissing only Dubric's cheek after Dubric turned her head and pulled away. (Compl. ¶ 13; Dubric Dep. 88:10–89:18.) On or about May 27, 2015, A Cab and Nady demoted Dubric from road supervisor to taxi cab driver, and Dubric resigned. (Compl. ¶¶ 14–15.)

Dubric filed a claim for unemployment, but the Nevada Employment Security Division denied her benefits. (Am. Countercl. ¶ 9, ECF No. 29 at 11.) On July 27, 2015, at an appeal hearing regarding the denial of unemployment benefits, Dubric recounted her claims of sexual harassment and offensive touching to the state referee. (*Id.* at ¶ 12.) Dubric filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 17, 2015, and was issued a Notice of Right to Sue. (Compl. ¶ 7; Countercl. ¶ 10.) On November 6, 2015, Dubric filed this suit making three claims solely against A Cab: (1) sexual harassment—hostile work environment in violation of Title VII; (2) sexual harassment—quid pro quo in violation of Title VII; and (3) retaliation in violation of Title VII; and two claims against both A Cab and Nady: (1) intentional infliction of emotional distress; and (2) battery. On April 26, 2016, following the dismissal of his original counterclaim, Nady filed an amended counterclaim for defamation.

Defendants now move the Court for defensive summary judgment on Plaintiff's claims, and Nady moves for offensive summary judgment on his counterclaim. (Mot. Summ. J., ECF No. 38.)

///

///

## II. LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient

that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

**III.   ANALYSIS**

Defendants and Plaintiff alike present rather little evidence to support their arguments. Dubric proffers her own testimony regarding the allegedly harassing conduct of Nady. Defendants proffer Nady's testimony that Dubric is lying. We are left with a fairly prototypical he said, she said, resulting in numerous genuinely disputed facts. At summary judgment, the Court must resolve these factual disputes in favor of the non-moving party. Therefore, for purposes of this Motion, the following facts must be taken as true:

- Nady commented to Dubric that "he liked to see beautiful legs in ladies like [her]." (Dubric Dep. 27:17–28:6, ECF No. 40-2.)

- At various times during Dubric's employment at A Cab, Nady placed his hand on Dubric's back and shoulders, rubbed her back, and slid his hand from her shoulders down her back. (*Id.* at 29:12–16; 31:6–19; 37:19–39:22.)

- At various times during Dubric's employment at A Cab, Nady complimented Dubric on her looks, including her hair and clothes, and on at least one occasion told her she was "sexy." (*Id.* at 55:3–21; Pl.'s Resp. to Interrogatories 11, ECF No. 40-3.)

- In February 2015, without Dubric's consent, Nady grabbed Dubric's face with both hands and forcibly kissed her on the mouth. (Dubric Dep. 49:4–50:16, ECF No. 40-2; 78:1–17, ECF No. 38-1.)

- On May 26, 2015, following a one-on-one meeting, while shaking hands, Nady grabbed Dubric's arm, pulled her toward him, and leaned toward her face. Anticipating that Nady would try to kiss her again, Dubric turned her face away, and Nady kissed her on the cheek. (*Id.* at 88:16–89:9, ECF No. 40-2.)

- On May 27, 2015, A Cab removed Dubric from her position as road supervisor. (*Id.* at 59:4–24.)

- Dubric never complained about Nady's behavior to A Cab management, nor did she ask Nady to stop. (*Id.* at 38:19–39:14; Resp. Mot. Summ. J. 3, ECF No. 40.)

- Following her resignation, Dubric told various A Cab drivers and dispatch personnel that Nady sexually harassed and/or assaulted her. (Dubric Dep. 97:2–98:16, ECF No. 38-1; Resp. Mot. Summ. J. 6, ECF No. 40.)

The questions for the Court are: (1) whether, based on these facts, a reasonable jury could find in favor of Plaintiff on each of her claims, and (2) whether Nady has presented sufficient

evidence to show there is no genuine dispute of fact regarding all elements of his defamation claim.

### a. Hostile Work Environment

To prevail on a hostile work environment claim under Title VII, the plaintiff must demonstrate that his or her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to create an abusive working environment. *Brooks v. City of San Mateo*, 229 F.3d 917, 923–24 (9th Cir. 2000) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The working environment must be both "subjectively and objectively" perceived as abusive by the plaintiff. *Id.* (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)). Moreover, a court must consider the totality of the circumstances when determining whether the racial or gender hostility in a work environment is so severe or pervasive as to violate Title VII. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112–13 (9th Cir. 2004). The alleged conduct need not cause mental harm, and it is enough "if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.* (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994)). While a single incident is usually insufficient to demonstrate a hostile work environment, if the harassment is more severe, there is less need for the plaintiff to show the pervasive nature of the conduct. *Brooks*, 229 F.3d at 926.

When evaluating the objective hostility of a work environment, the court considers a number of factors including the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest*, 360 F.3d at 1113 (quoting *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001)); *see also Harris*, 510 U.S. at 23

(listing these factors). Allegations of a sexually hostile workplace are assessed from the perspective of the reasonable victim. *Brooks*, 229 F.3d at 924.

An employer's liability for harassing conduct varies according to whether the harasser is a supervisor, co-worker, or non-employee. *McGinest*, 360 F.3d at 1119; *Vance v. Ball State Univ.*, 133 S.Ct. 2434, 2439 (2013). "In general, an employer is vicariously liable for a hostile environment created by a supervisor." *Nichols*, 256 F.3d at 877 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 780 (1998)). In situations where there is no tangible employment action against the plaintiff, the employer retains the affirmative defense that it "exercised reasonable care to prevent and correct" the harassing behavior, and "that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).

To defeat Defendants' motion for summary judgment, Dubric must show: "(1) [she] was subjected to verbal or physical conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 892 (9th Cir. 2005). The Court first finds that Dubric has sufficiently established the first two prongs of her hostile work environment claim. Dubric testified that Nady forcibly kissed her on the lips on one occasion, and attempted to kiss her again on another occasion, only missing her lips because she turned her face away from him. This is conduct of a sexual nature that would unquestionably be unwelcome to a reasonable woman in Dubric's position, and was subjectively unwelcome to Dubric.

The closer question is whether Nady's alleged conduct was sufficiently severe or pervasive to alter Dubric's conditions of employment. The Ninth Circuit has "repeatedly held that it should not take much for a plaintiff in a discrimination case to overcome a summary

judgment motion." *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015). However, it is also well established that "[s]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *U.S. E.E.O.C. v. GNLV Corp.*, No. 2:06-cv-01225-RCJ, 2014 WL 7365871, at *14 (D. Nev. Dec. 18, 2014) (quoting *Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *McGinest*, 360 F.3d at 1113 (quoting *Nichols*, 256 F.3d at 872).

Much of the conduct alleged by Dubric likely would not be patently offensive to the objectively reasonable woman. Dubric alleges that Nady would, from time to time, comment on her looks. (Dubric Dep. 55:3–21, ECF No. 40-2 ("That I looked good, he say [sic], and I look good today, my hair, my clothes.").) Dubric testified that she considered these comments to be compliments, and she occasionally even said "thank you." (*Id.*) Regarding the one specific comment Nady allegedly made—that he "liked to see beautiful legs in ladies like" Dubric—Dubric testified it bothered her only "a little bit." (*Id.* at 29:10–11.) The alleged sporadic touching incidents appear to be of similarly minor severity. Dubric alleges that, a few times over the course of many years, Nady touched her briefly on the shoulders or back. (*Id.* at 31:6–19; 37:19–24.) Dubric herself tends to downplay these incidents in her deposition testimony, stating that she did not consider the comment about her legs or the shoulder touching in filing her charge of discrimination:

> Q: So the incidents that we just talked about where Mr. Nady made a comment about your legs and that be put his hand on your shoulder, did you not consider those in the filing of this charge?
> A: Not really because I ignore it. I don't go. Somebody tries something, I don't go to front of the face that person a lot. I try to avoid.

(*Id.* 37:7–13.) The alleged conduct of Nady should not be minimized, and the Court has no trouble concluding that conduct of this nature is certainly inappropriate where it is unwelcome. In fact, reasonable people could debate whether this type of conduct is ever appropriate in the workplace. To an objectively reasonable woman, however, these comments and touching incidents are borderline offensive at worst, and do not rise to the level of severity or frequency necessary to support a claim of a hostile work environment under Title VII.

Conduct that is physically threatening, on the other hand, is far more serious than the occasional inappropriate remark or caress of the shoulder. Dubric alleges two physically aggressive incidents of harassment, separated by three months, where Nady grabbed her and forcibly kissed her. Individually, these incidents are objectively less severe than others that some courts have found insufficiently serious to violate Title VII. *See, e.g.*, *Brooks*, 229 F.3d at 927 (single incident where employee positioned himself behind plaintiff's chair, boxed her in against the communications console as she was taking a 911 call, and forced his hand underneath her sweater and bra to fondle her bare breast). Moreover, a somewhat mitigating factor is the fact that Dubric never verbally denied Nady's advances or told him his advances were unwelcome. Therefore, it is impossible to know whether Nady would have stopped his conduct had Dubric simply told him she was not interested. *See, e.g.*, *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1052 (9th Cir. 2007) (where plaintiff's repeated verbal refusals of harasser's advances and requests that such behavior stop contributed to severity of conduct). However, even well-intentioned conduct "can form the basis of a sexual harassment cause of action if a reasonable victim of the same sex as the plaintiff would consider the [conduct] sufficiently severe or pervasive to alter a condition of employment and create an abusive working environment." *Ellison v. Brady*, 924 F.2d 872, 880 (9th Cir. 1991). Therefore, even if Nady did not subjectively know his conduct was unwelcome to Dubric, it does not necessarily mean the conduct did not

violate Title VII. Furthermore, notwithstanding Dubric's failure to rebuff Nady's advances verbally, the Court finds there is sufficient evidence for a reasonable trier of fact to conclude that Nady knew his conduct was unwelcome to Dubric, and nonetheless continued to engage in it. Specifically, Dubric testified that when Nady first kissed her in February 2015, her response was to "pull [her] whole body away from him and walk away." (Dubric Dep. 78:4–6, ECF No. 38-1 at 13.) She later testified the kiss only lasted the time it took her to "get off his hands, turn around and just walk away." (*Id.* at 78:20–22.) This is not the reaction of a person who wants to be kissed. However, Nady nonetheless attempted to forcibly kiss Dubric a second time three months later. During the May 2015 incident, Dubric again resisted, turning her head away from Nady, and struggling against his grasp. Nady persisted, however, and instead of releasing Dubric as she struggled, he followed through and kissed her on the cheek. (*Id.* at 88:16–89:6.)

      The two physical incidents Dubric recounts are infrequent and rather isolated; however, they are severe. They would have required a level of physical force that a reasonable jury could find threatening and abusive. Furthermore, a reasonable jury could conclude that Nady knew his advances were unwelcome and offensive based on Dubric's reactions, and yet persisted in his conduct, and repeated the conduct. Moreover, the severity of the allegations is exacerbated to an extent by Nady's position as owner of A Cab. Plaintiff asserts she did not speak out about the incidents of harassment because she was afraid to lose her job. (Pl.'s Resp. to Interrogatories 11, ECF No. 40-3 at 12.) When a coworker or immediate supervisor engages in harassment, a victim can report it to an individual with successively higher authority; but the abuse of authority is far greater, and it is much more difficult for a victim to speak up, when the harasser is not only the victim's boss, but everyone else's as well.

      In close cases like this one, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis v. Team Elec. Co.*, 520

F.3d 1080, 1096 (9th Cir. 2008). The Court does not suggest that Dubric will be successful in persuading a jury, but the evidence presented is enough to survive summary judgment.

Because genuine disputes of material fact exist regarding Dubric's hostile work environment claim, the Court reaches A Cab's *Faragher/Ellerth* defense to vicarious liability. The defense fails. The *Faragher* Court itself recognized that certain high-level executives, such as a corporation's president, are "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998) (citing *Burns v. McGregor Electronic Industries, Inc.*, 955 F.2d 559, 564 (8th Cir. 1992) (employer-company liable where harassment was perpetrated by its owner); *Torres v. Pisano*, 116 F.3d 625, 634-635, and n. 11 (2nd Cir. 1997) (noting that a supervisor may hold a sufficiently high position "in the management hierarchy of the company for his actions to be imputed automatically to the employer"), *cert. denied*, 522 U.S. 997 (1997)); *see also Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 516 (9th Cir. 2000) ("[A]n individual sufficiently senior in the corporation must be treated as the corporation's proxy for purposes of liability."). Here, the alleged harasser, Nady, is the proprietor of A Cab. Accordingly, his actions are imputed automatically to the employer, and there is no need for Dubric to demonstrate that it is appropriate to hold A Cab vicariously liable. *See id.* (citing *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir. 1983) ("Except in situations where a proprietor, partner or corporate officer participates personally in the harassing behavior, the plaintiff will have the additional responsibility of demonstrating the propriety of holding the employer liable under some theory of respondeat superior.").

Therefore, the Court denies summary judgment on Dubric's hostile work environment claim.

/ / /

### b. Quid Pro Quo

To prove harassment under a quid pro quo theory, a plaintiff must show her employer "explicitly or implicitly condition[ed] a job, a job benefit, or the absence of a job detriment, upon an employee's acceptance of sexual conduct." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1054 (9th Cir. 2007) (quoting *Nichols v. Frank*, 42 F.3d 503, 511 (9th Cir. 1994)). Dubric has not alleged that Nady expressly conditioned her retention of the road supervisor position on her acceptance of his advances. Rather, she testified that, on May 26, 2015, Nady grabbed her arm, pulled her toward him, and attempted to kiss her. However, Dubric resisted, turned her face to the side, causing Nady to kiss her on the cheek as opposed to the mouth, and pulled away from Nady's grasp. (Dubric Dep. 88:16–89:9, ECF No. 40-2.) The following day, Dubric was removed from the road supervisor position, and told she would continue as a cab driver—an effective demotion. (*Id.* at 59:4–24.) This is sufficient to state a prima facie case of quid pro quo sexual harassment. *See Heyne v. Caruso*, 69 F.3d 1475, 1478–79 (9th Cir. 1995) (plaintiff stated prima facie case of quid pro quo sexual harassment by alleging she was fired the day after declining company owner's proposition for sex).

Therefore, under *McDonnell Douglas*, the burden shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for Dubric's demotion. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The Court finds Defendants have failed to carry this burden. While the evidence suggests that legitimate reasons may have existed for the elimination of the road supervisor position, and, alternatively, for the removal of Dubric from said position, there is a stark lack of competent evidence regarding the actual reason for the ultimate decision to demote Dubric. Defendants have not presented any documentary evidence relating to the demotion and indicating the reasons for the employment action. Furthermore, none of the deposition testimony proffered by Defendants provides a clear articulation of the reasons for the

demotion, and most of the testimony lacks adequate foundation. For example, Robert McCullough, A Cab's Operations Manager, testified:

> Q: Who made the decision to discontinue the position?
> A: Oh, it happened quite a while before that, so, you know, I'm not really sure.
> Q: Can you --
> A: It's possible that I may have even given some input. I know that there were some factors involved in having road supervisors and not having them, and I know that there were some discussions [and] that I may have been part of some of those discussions.

(McCullough Dep. 14:11–20, ECF No. 41-1 at 3.) Similarly, Scott Dorsch, Assistant General Manager of A Cab, testified:

> Q: Who made the decision to no longer have a road supervisor?
> A: I'm not sure.
> Q: Do you recall who had input into that decision?
> A: I mean, it would have been management, but I don't want to guess who was involved in the decision because it would be a guess.
> Q: Were you involved in that decision?
> A: No, I didn't have a say in it.

(Dorsch Dep. 18:1–10, ECF No. 41-1 at 8.) Mr. Dorsch, who was not involved in the decision, and Mr. McCullough, who "may possibly have given some input," are the individuals who actually informed Dubric that she was being removed as road supervisor. (McCullough Dep. 19:11–20:12.)

At the very least, one would expect Mr. Nady to know why Dubric was demoted, but even his deposition testimony is equivocal. First, he minimizes his own involvement in the decision and indicates his memory of events is less than clear:

> Q: Did you make the decision that the road supervisor position should be eliminated?
> A: I don't know if I made it or I just agreed to it. I don't remember whose suggestion it was.

(Nady Dep. 25:7–10, ECF No. 40-4.) Then, he contradicts Mr. Dorsch's testimony by stating that Dorsch was involved in the discussion to eliminate the road supervisor position. (*Id.* at 25:11–

17.) He next indicates that he doesn't know whether the decision was one simply to remove Dubric or to eliminate the position entirely, and proceeds to suggest that Dubric was demoted, at least in part, based on an A Cab driver's sexist notion that women should not change tires when men are around:

> Q: So was the discussion more about removing Ms. Dubric from the position or more about eliminating the position?
> A: I couldn't tell you that. And I probably shouldn't expound on this -- I'll hear it from counsel here -- but we realized that Dubric -- the road supervisor's job was itemized as when there's an accident, you go to make sure that the driver doesn't do something stupid. You provide counsel if they are in grief. You try to get a sense of what happened, and you sort of keep the driver from making a comment that might end up in a lawsuit. Sort of keep them quiet, and we went over this with every road supervisor we ever had. Road supervisor also carries a spare tire in their car. For the first time we had a spare tire incident, the driver saw her coming to change it, and he wouldn't let her do it. The driver thought that this woman shouldn't be changing a tire when he's standing there.

(*Id.* at 26:6–25.)

The sum total of the deposition testimony of three top executives of A Cab appears to be a lot of faulty memory and passing the buck, and the various reasons given for the demotion lack sufficient foundation and consistency for disposition on summary judgment. The Court reiterates that it appears legitimate reasons may have existed to eliminate the road supervisor position. However, given the state of the evidence presented by Defendants, the actual reason for Dubric's demotion is a question better left to the jury.

Accordingly, the Court denies summary judgment on Dubric's quid pro quo sexual harassment claim.

### c. Retaliation

To establish a prima facie case of retaliation a plaintiff must show that (1) she was engaged in an activity protected by Title VII, (2) her employer subjected her to an adverse employment action, and (3) a causal connection exists between the two. *See Manatt v. Bank of*

*Am.*, 339 F.3d 792, 800 (9th Cir. 2003) (citing *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013). "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). In some cases, "causation may be established based on the timing of the relevant actions. Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Passantino*, 212 F.3d at 507.

Dubric's allegations, taken as true for this Motion, show that she engaged in protected activity. On May 26, 2015, Nady held Dubric's arm, pulled her toward him, and attempted to kiss her. Dubric resisted, turned her head to avoid being kissed on the lips, and pulled away. By resisting Nady's advances and refusing to submit to his harassing conduct, Dubric engaged in "the most basic form of protected activity." *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000). The following day, she suffered an adverse employment action when A Cab removed her from the road supervisor position. Therefore, Dubric has established the first two elements of her prima facie case of retaliation.

"Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Nady surely would have been aware of Dubric's engagement in protected activity—it was his own sexual advances she rejected—and the evidence shows Dubric was demoted the very

next day. Taking the evidence in the light most favorable to Dubric, the Court finds the close temporal proximity of relevant events sufficient to establish a prima facie case of causation.

The remaining analysis of the retaliation claim is the same as that conducted for Dubric's quid pro quo sexual harassment claim. Because Dubric has established a prima facie case of retaliation, the burden shifts under *McDonnell Douglas* and A Cab must articulate a legitimate, nondiscriminatory reason for Dubric's demotion. For the reasons stated *supra,* the Court finds A Cab has failed to carry this burden, and denies summary judgment with respect to retaliation.

### d. Intentional Infliction of Emotional Distress

To succeed on a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (quoting *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981)). "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent–A–Car*, 953 P.2d 24, 26 (Nev. 1998) (citations omitted).

Drawing all inferences in Dubric's favor, she has made a prima facie showing with respect to the second and third prongs of her IIED claim. Dubric has testified that she was treated by multiple physicians and was diagnosed with and prescribed medication for anxiety, depression, and post-traumatic stress disorder as a result of the harassment she experienced at A Cab. (Dubric Dep. 105:3–111:9, ECF No. 40-2.) *See Burns v. Mayer*, 175 F. Supp. 2d 1259, 1268–69 (D. Nev. 2001) (plaintiff sufficiently alleged severe emotional distress where she suffered from stress and depression, had undergone psychiatric treatment and been diagnosed

with "adjustment disorder," and had been prescribed medication); *see also Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1108 (D. Nev. 2001) (same).

The remaining question is whether Nady's alleged conduct was so extreme and outrageous so as to put it outside all possible bounds of decency. Whether conduct is extreme and outrageous is typically a question not well-suited for determination by judges. *See Branda v. Sanford*, 97 Nev. 643, 649, 637 P.2d 1223, 1227 (1981) ("The jury was entitled to determine, considering prevailing circumstances, contemporary attitudes and [plaintiff's] own susceptibility, whether the conduct in question constituted extreme outrage."). Dubric alleges Nady used physical force to kiss her without her consent on two occasions, despite the fact that Dubric's body language indicated the kisses were unwanted and unwelcome. Dubric further testified that Nady kissed her with an open mouth, and that he kissed her "like [she] belonged to him." (Dubric Dep. 78:9–15, ECF No. 38-1 at 13.) Other courts have found that similar behavior could rise to the level of extreme and outrageous. *See, e.g.*, *Priest v. Rotary*, 634 F.Supp. 571, 574 (N.D. Cal. 1986) (male employee grabbed female coworker around the waist and touched her breasts); *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 511 (S.D.N.Y. 2000) (male employee grabbed female coworker in a "bear hug" and slapped her buttocks); Burns, 175 F. Supp. 2d at 1263 (male employees slapped buttocks, "popped" bra strap, and put hands around waist of female coworker). In each of these cases involving sexually offensive conduct, the court found that summary judgment was not appropriate as to the plaintiff's intentional infliction of emotional distress claim. Here also, the question of whether Nady's actions constituted "extreme or outrageous" conduct is best left to a jury. *See Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993).

/ / /

/ / /

### e. Battery

"To establish a battery claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive contact, and (2) such contact did occur." *Burns*, 175 F. Supp. 2d at 1269. In *Burns*, the court held that summary judgment was inappropriate on Plaintiff's battery claim because evidence was presented that Plaintiff's coworkers pressed their bodies against Plaintiff's and hit Plaintiff's buttocks with a clipboard and an egg crate. *Id.* Similarly, Dubric has presented her own deposition testimony that Nady intentionally touched her back and shoulders, forcefully grabbed her face and arm, and kissed her, all without her consent. While Nady denies this contact occurred, this simply raises a genuine issue for trial. A jury should be permitted to assess Dubric's and Nady's respective credibility and decide which version of events to believe. Accordingly, summary judgment is inappropriate with respect to Dubric's battery claim.

### f. Defamation

"[T] establish a prima facie case of defamation, a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Chowdhry v. NLVH, Inc.*, 851 P.2d 459, 462 (Nev. 1993). As the party asserting defamation, Nady bears the burden of proof on summary judgment. Nady has established that Dubric told various A Cab drivers and dispatch personnel that Nady sexually harassed and/or assaulted her. (Dubric Dep. 97:2–98:16, ECF No. 38-1; Resp. Mot. Summ. J. 6, ECF No. 40.) If Dubric's statements were false, this would constitute unprivileged publication and satisfy the first three elements of a defamation claim (because surely Dubric would have had knowledge of falsehood).  However, Nady has failed to establish or even present an argument on the element of damages. Typically, "a plaintiff must also show special damage as a part of a prima facie case of ordinary slander." *K-Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993). Of course,

"[c]ertain classes of defamatory statements are considered so likely to cause serious injury to reputation and pecuniary loss that these statements are actionable without proof of damages." *Id.* Such statements, deemed defamatory per se, include "imputing [a] person's lack of fitness for trade, business, or profession [or] imputing serious sexual misconduct." *Id.* However, Nady has not argued that Dubric's statements are defamatory per se, and the Court is not willing to meet Nady more than halfway on this point.

More importantly, however, Nady has not shown that there is no genuine dispute of material fact regarding the alleged falsehood of Dubric's statements. Dubric claims Nady sexually harassed and assaulted her; Nady claims Dubric is lying. It should be left to a jury to see them both testify and decide which of them is telling the truth.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment (ECF No. 38) is DENIED.

IT IS SO ORDERED.

_____
ROBERT C. JONES
United States District Judge

Dated: This 8th day of December, 2016.