# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JASMINKA DUBRIC,<br><br>        Plaintiff,<br><br>vs.<br><br>A CAB, LLC et al.,<br><br>        Defendants. | 2:15-cv-02136-RCJ-CWH<br><br>**ORDER** |

This case arises out of Plaintiff Jasminka Dubric's ("Dubric") allegations that the owner of her former employer A Cab, LLC ("A Cab") sexually harassed her and touched her in an offensive manner. In response, A Cab's owner Creighton J. Nady ("Nady") filed a counterclaim against Dubric for defamation. (ECF No. 29.) Now pending before the Court are the parties' motions in limine. (ECF Nos. 46–49.) Jury trial in this case is currently set for Tuesday, February 21, 2017, at 8:30 AM in Las Vegas Courtroom 4B.

## I.  FACTS AND PROCEDURAL BACKGROUND

Plaintiff Jasminka Dubric began working for A Cab on March 20, 2001. (Compl. ¶ 8, ECF No. 1.) Dubric alleges that from the beginning of her employment until May 26, 2015, Nady "made comments about Plaintiff's appearance and body" and hugged and touched her without permission. (*Id.* at ¶ 10.) Dubric did not complain because she feared losing her job. (*Id.*) Dubric alleges that in February 2015, Nady "grabbed her face and forcefully kissed her on the

mouth." (*Id.* at ¶ 12; Dubric Dep. 49:1–50:16, ECF No. 40-2.) On May 26, 2015, following a meeting to discuss Dubric's company-provided cell phone, Nady and Dubric shook hands, at which time Nady grabbed Dubric's arm, pulled her toward him, and attempted to kiss her on the lips; however, Nady ended up kissing only Dubric's cheek after she turned her head and pulled away. (Compl. ¶ 13; Dubric Dep. 88:10–89:18.) On or about May 27, 2015, A Cab and Nady demoted Dubric from road supervisor to taxi cab driver, and Dubric resigned. (Compl. ¶¶ 14–15.)

On November 6, 2015, Dubric filed this suit making three claims solely against A Cab: (1) sexual harassment—hostile work environment in violation of Title VII; (2) sexual harassment—quid pro quo in violation of Title VII; and (3) retaliation in violation of Title VII; and two claims against both A Cab and Nady: (1) intentional infliction of emotional distress; and (2) battery. In addition, Nady has asserted a counterclaim against Dubric for defamation. On December 8, 2016, the Court denied Defendants' motion seeking defensive summary judgment on Dubric's claims and offensive summary judgment on Nady's counterclaim. (*See* Order, ECF No. 42.)

In view of the upcoming trial of this case, the parties have submitted evidentiary motions. Dubric seeks an order (1) granting an adverse inference instruction to the jury based on spoliation of evidence, (2) excluding evidence of damages related to Nady's defamation claim based on a failure to disclose under Rule 26, and (3) precluding Defendants from referencing the availability of an award of attorneys' fees if Dubric prevails on her claims.[1] (Pl.'s Mots. Lim., ECF Nos. 46–48.) In turn, Defendants seek to exclude (1) evidence of Defendants' net worth; (2)

---

1 Dubric also filed reply briefs in support of all her motions in limine. (ECF Nos. 56–58.) However, under Local Rule 16-3, replies related to motions in limine are only permitted with leave of the Court. Dubric did not obtain nor even request leave, and the Court will therefore disregard the replies.

testimony or argument that is contrary to Dubric's prior assertion that her personal injuries are work-related; (3) evidence of Dubric's damages based on lost wages; (4) any documents not produced contemporaneously with a custodian of records certificate; (5) evidence of claimed medical treatment; (6) evidence from Dubric's treating physicians; (7) evidence pertaining to claimed events on dates inconsistent with Dubric's EEOC charge or outside the applicable statutes of limitations; and (8) all evidence of Dubric's damages. (Defs.' Mot. Lim., ECF No. 49.)

## II.   LEGAL STANDARDS

A motion in limine is a procedural device used to obtain an early and preliminary ruling on the admissibility of evidence. "Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." Black's Law Dictionary 1171 (10th ed. 2014). Trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp.

1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are preliminary and therefore "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

**III. ANALYSIS**

    **a. Dubric's First Motion in Limine (ECF No. 46)**

Dubric requests that the Court grant a jury instruction of adverse inference as a sanction for Defendants' failure to preserve and produce video surveillance footage relevant to the case. Dubric alleges that Nady sexually harassed her in his office on May 26, 2015, while the two were alone, and that she quickly left the office following the incident. Nady contends, on the other hand, that he and Dubric were never alone in his office that day, and that he and Dubric exited the office together, along with A Cab executive Scott Dorsch. (Pl.'s Mot. Lim. 4–6, ECF No. 46.)

While there is no surveillance camera in Nady's office to confirm either story, there is a camera in the lobby just outside. (*Id.* at 5–6; Gathright Decl. ¶¶ 2–5, ECF No. 59.) Dubric asserts that the May 26, 2015 footage from the lobby camera would bolster her version of events and contradict Nady's, because it would show her leaving Nady's office alone. However, in May

2015, the lobby camera was on a seven-day storage loop, with footage automatically overwritten unless specifically designated for preservation. (Gathright Decl. ¶ 7.) Defendants did not preserve the lobby camera footage from May 26, 2015, and thus Dubric alleges spoliation.

In general, a party has a "duty to preserve evidence when it knows or reasonably should know the evidence is relevant and when prejudice to an opposing party is foreseeable if the evidence is destroyed." *Lewis v. Ryan*, 261 F.R.D. 513, 518 (S.D. Cal. Oct. 23, 2009) (citing *Kronisch v. United States*, 150 F.3d 112, 130 (2d Cir. 1998)); *see also Performance Chevrolet, Inc. v. Market Scan Info. Sys.*, 2006 WL 1042359, at *1 (D. Idaho Apr.18, 2006) ("The majority of courts have held that pre-litigation destruction can constitute spoliation when litigation was 'reasonably foreseeable' but not where it was 'merely possible.'"). Where a party breaches this duty and relevant evidence is destroyed, "[a] federal trial court has the inherent discretionary power to make appropriate evidentiary rulings." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). A finding of bad faith is not required for the court to impose sanctions, and "simple notice of 'potential relevance to the litigation'" will suffice. *Id.* (quoting *Akiona v. United States*, 938 F.2d 158 (9th Cir. 1991)). District courts have "broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." *Id.*

Here, the Court will deny Dubric's motion for an adverse inference instruction because she does not have sufficient evidence of spoliation. For spoliation, there must at least be some indication that Defendants "reasonably should have known" the lobby camera footage would be relevant to foreseeable litigation. Due to Defendants' seven-day video storage loop, it would have been necessary for Defendants to gain this knowledge prior to approximately June 2, 2015, in order to have a chance to preserve the relevant recording. In her motion, Dubric does not allege a date on which Defendants should have become aware of the relevance of the lobby

camera footage. Dubric didn't file her EEOC charge against Defendants until July 17, 2015, by which time the relevant recording would have already been overwritten. Moreover, Nady maintains that he was not alone in his office with Dubric on May 26, 2015, and that he didn't touch her inappropriately on that date, so there would have been no reason for him to believe that any surveillance footage captured at A Cab on that date could be relevant to future litigation with Dubric. At best, the Court could conclude that Defendants had a duty to preserve the lobby camera footage as of the date on which Dubric notified Defendants of her specific allegation of the May 26, 2015 incident. However, Dubric presents no evidence regarding when Defendants were so notified, and it does not appear that such notification was provided in time for Defendants to pull the footage from the seven-day storage loop.

Therefore, Dubric may question witnesses regarding the destroyed lobby camera footage, and the jury may draw its own inferences. However, it would be inappropriate in these circumstances for the Court to give an adverse inference instruction to the jury.

### b. Dubric's Second Motion in Limine (ECF No. 47)

Next, Dubric asserts that Nady has failed to disclose specific damages arising from his counterclaim of defamation, and therefore all evidence of defamation damages should be excluded. Nady apparently concedes that he did not disclose a computation of alleged defamation damages, but argues that he is not seeking special damages. Rather, he is seeking only general damages under a theory of slander per se. (Resp. 2–3, ECF No. 55.)

Slander per se is "an oral statement which would tend to injure the plaintiff in his or her trade, business, profession or office." *Bongiovi v. Sullivan*, 122 Nev. 556, 577, 138 P.3d 433, 448 (2006) (citation and quotation marks omitted).

> With slander per se, the plaintiff is entitled to presumed, general damages. General damages are those that are awarded for loss of reputation, shame, mortification and hurt feelings. General damages are presumed upon proof of the defamation alone because that proof establishes that there was an injury that

> damaged plaintiff's reputation and because of the impossibility of affixing an exact monetary amount for present and future injury to the plaintiff's reputation, wounded feelings and humiliation, loss of business, and any consequential physical illness or pain. . . . [A]n award of presumed general damages must still be supported by competent evidence but not necessarily of the kind that assigns an actual dollar value to the injury.

*Id.* (citations and quotation marks omitted).

The Court will grant Dubric's motion in part and deny it in part. Nady did not disclose a computation of special damages; therefore, he will not be permitted to introduce evidence of special damages at trial. However, Nady will be permitted to introduce evidence of general damages. Because general defamation damages based on slander per se need not be "of the kind that assigns an actual dollar value to the injury," such damages are ill-suited to the computation required by Rule 26. Moreover, the Court finds that Nady's failure to mention general damages in his Rule 26 disclosure is harmless, because he plainly disclosed his intention to seek general damages in the counterclaim itself. (*See* Counterclaim 9–10, ECF No. 26.)

### c. Dubric's Third Motion in Limine (ECF No. 48)

Lastly, Dubric seeks to preclude Defendants from referencing or making argument concerning her potential for an award of attorneys' fees if she prevails in this case. Contrary to Defendants' argument, the question raised in this motion is answered by *Brooks v. Cook*, 938 F.2d 1048 (9th Cir. 1991). There, the Ninth Circuit held that it was reversible error for the trial court to "inform the jury of the possibility of fees," which were available to the plaintiff under 42 U.S.C. § 1988. *Id.* at 1051. The Court of Appeals stated: "The information has no relevance to the task before the jury, and might lead the jury to improperly adjust its findings in contravention of the legislative purpose behind § 1988. By telling the jury of the existence of § 1988, the judge erred." *Id.* at 1053.

/ / /

Here as well, information regarding the availability of attorneys' fees is both irrelevant and potentially prejudicial. *See, e.g.*, *Feezor v. Golden Bear Rest. Grp., Inc.*, No. 2:09-cv-03324-GEB, 2012 WL 2873353, at *3 (E.D. Cal. July 12, 2012); *Redwood Christian Schools v. Cnty. of Alameda*, No. C–01–4282 SC, 2007 WL 214317, at *2 (N.D. Cal. Jan. 26, 2007). As the Ninth Circuit observed in *Brooks*: "The award of attorneys' fees is a matter of law for the judge, not the jury. . . . The jury's role is to determine liability and the amount of damages. These determinations are distinct from the awarding of fees." 938 F.2d at 1051.

Therefore, the Court will grant Dubric's motion. In the presence of the jury, Defendants shall not mention that attorneys' fees may be available to Dubric in this matter.

### d. Defendants' First Motion in Limine (ECF No. 49 at 4)

Defendants seek to exclude evidence of their net worth unless and until Dubric establishes a prima facie case for punitive damages. Dubric does not oppose the motion. The Court grants the motion. Evidence of a defendant's net worth is "distracting and prejudicial" unless a prima facie case of malice, oppression, or reckless disregard is first established. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 872 (9th Cir. 1985) (stating that improper introduction of net worth evidence is reversible error).

### e. Defendants' Second Motion in Limine (ECF No. 49 at 4–5)

Defendants next seek to exclude "testimony or argument that is contrary to Plaintiff's prior assertion that her personal injuries are occupationally-related." (Defs.' Mot. Lim. 4, ECF No. 49.) The motion is stated somewhat too broadly, however, because Dubric has not contended that her injuries are "occupationally-related," but merely that the injuries occurred "at her workplace." (*Id.*) Dubric does not intend to contradict her prior assertion that her injuries occurred at work, and does not oppose the motion in that sense. Accordingly, the Court will narrowly grant the motion: Dubric shall not testify or argue at trial that her injuries arose from

conduct occurring outside her workplace. However, the Court notes that this is strictly an evidentiary ruling—a preliminary ruling at that—and has no bearing on the question of whether any of Dubric's claims may be preempted by the Nevada Industrial Insurance Act. That issue is not properly before the Court on this motion.

### f. Defendants' Third Motion in Limine (ECF No. 49 at 5–7)

Defendants assert that Dubric failed to disclose a computation of lost wage damages in violation of Rule 26, and seek to exclude any evidence of such damages on that basis. In response, Dubric argues that she did disclose that she was seeking "lost wages due to unemployment from the date of the termination of her employment with Defendant through the present," and that her failure to disclose a calculation of lost wages is harmless because Defendants are her former employers and have in their custody and control all the information upon which such calculation would be based. (Resp. 5, ECF No. 52; ECF No. 49-1 at 17.)

The Court finds Dubric's Rule 26 disclosure of lost wage damages adequate. Defendants had all of Dubric's employment records, and knew her hours of work and applicable pay rate(s), and could easily have figured out the amount of Dubric's lost wages from the date of her termination through the present date. *See City & Cty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) ("[T]he 'computation' of damages required by Rule 26(a)(1)(C) contemplates some analysis; for instance, in a claim for lost wages, there should be some information relating to hours worked and pay rate."). Accordingly, Dubric's failure to provide a calculation of lost wages is harmless. *See Maharaj v. California Bank & Trust*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) ("Plaintiff has shown that her failure to disclose that analysis is harmless since the information on which these damages are calculated is already in Defendant's possession.").

///

Therefore, the Court will deny Defendants' motion, but only to the extent that Dubric's claimed lost wages are based on prior compensation from A Cab. In the event Dubric attempts to introduce evidence of lost wages based on earnings from other sources, such evidence will not be admitted due to Dubric's failure to disclose a computation under Rule 26. *See, e.g.*, *In re Kaplan*, No. 3:11-cv-00772-RCJ, 2013 WL 4041067, at *3 (D. Nev. Aug. 6, 2013).

### g. Defendants' Fourth Motion in Limine (ECF No. 49 at 7)

Defendants next seek to exclude "any documents not produced contemporaneously with a custodian of records affidavit." (Defs.' Mot. Lim. 7, ECF No. 49.) Defendants provide no legal support for their request, but rather argue that such evidence should be excluded because "[t]he introduction of a custodian of records affidavit is typically accepted to authenticate documents under Federal Rule of Evidence 902." (*Id.*) However, the failure to produce custodian of records affidavits in discovery does not amount to a complete failure to authenticate, and Dubric represents she is prepared to authenticate and lay proper foundation for all documentary evidence at trial. (Resp. 5–6, ECF No. 52.) Defendants' motion is denied.

### h. Defendants' Fifth and Sixth Motions in Limine (ECF No. 49 at 7–9)

Defendants also seek to exclude all testimony and evidence of claimed medical treatment arising from Dubric's injuries, and all testimony or evidence from Dubric's treating physicians. The deadline to designate expert witnesses in this case was May 9, 2016. (Defs.' Mot. Lim. 7–8, ECF No. 49.) Subsequently, Dubric disclosed certain medical providers as witnesses on May 19, 2016. (*Id.*) Furthermore, Defendants assert that Dubric did not produce her medical records in discovery until June 6, 2016. (*Id.*) The rebuttal expert disclosure deadline was June 8, 2016, and the discovery deadline was July 8, 2016. (Resp. 6, ECF No. 52.)

Defendants further assert they requested a signed authorization to obtain medical records, which Dubric refused to provide. (Defs.' Mot. Lim. 8.) Dubric counters that she raised valid

objections to the authorization form—including that it was overbroad, was not limited to five prior years of records, and did not have an expiration date as required by 45 C.F.R. 164.508(c)(1)(v)—to which Defendants never responded. (Resp. 6–7, ECF No. 52.) The crux of Defendants' argument on these motions is that Dubric obstructed their discovery efforts by waiting until the last minute to disclose evidence and witnesses pertaining to medical treatment, thereby preventing Defendants from discovering rebuttal evidence.

First, it is clear that Dubric's medical providers were disclosed as witnesses after the expert witness disclosure deadline. Dubric has offered no valid excuse for her lateness. Therefore, Dubric's medical providers may not testify *as experts*. However, a question remains whether they should be permitted to testify as percipient fact witnesses. *See, e.g.*, *Fisher v. Ford Motor Co.*, 178 F.R.D. 195, 197 (N.D. Ohio 1998) ("Courts consistently have found that treating physicians are not expert witnesses merely by virtue of their expertise in their respective fields. Only if their testimony is based on outside knowledge, not on personal knowledge of the patient and his or her treatment, may they be deemed experts.").

The Court finds there are factual disputes precluding a preliminary ruling on these motions. Defendants assert Dubric disclosed her treating physicians as witnesses on May 19, 2016, and produced her medical records on June 6, 2016. In contrast, Dubric contends that she disclosed these witnesses and produced the medical records at the same time, both on May 19. (Resp. 6. ECF No. 52.) If the medical records were produced on May 19, as Dubric claims, there was likely sufficient time for Defendants to retain an expert and prepare a rebuttal report prior to the rebuttal expert disclosure deadline of June 8. It is also unclear when Defendants requested Dubric's medical records, when Defendants requested a signed authorization to obtain medical records, and when Dubric responded to each of these requests. Moreover, the discovery deadline was not until July 8, so Defendants had nearly two months to depose Dubric's treating physicians

after they were disclosed on May 19. Finally, it is unclear whether Dubric properly and timely raised valid objections to the medical records authorization proffered by Defendants, and whether Defendants made any attempt to address the objections.

Therefore, the Court will reserve judgment on these motions until it has had an opportunity to hear from the parties at the time of trial. Defendants will raise these issues at an appropriate time so the Court may hear arguments and make final rulings.

### i. Defendants' Seventh Motion in Limine (ECF No. 49 at 9–10)

Next, Defendants seek to exclude "any testimony or evidence pertaining to claimed events with dates inconsistent with [Dubric's] EEOC charge (giving suit rights); or which are outside the statute of limitations." (Defs.' Mot. Lim. 9–10, ECF No. 49.) Defendants argue that Dubric's EEOC charge indicates the "earliest" occurrence of discrimination occurred on May 27, 2015; therefore, Dubric should be precluded from introducing evidence of claimed events occurring prior to that date. This argument appears to be premised on a failure to exhaust administrative remedies with respect to alleged harassment occurring before May 27, 2015. However, Dubric was issued her notice of right to sue on August 6, 2015. (ECF No. 49-3 at 16.) Prior to that time, on July 24, 2015, the EEOC received the charge of discrimination Dubric originally filed with the Nevada Equal Rights Commission ("NERC"). (ECF No. 49-3 at 18.) In her NERC charge, Dubric clearly claims harassment starting in February 2015 and continuing through on or about May 26, 2015. Accordingly, there is no basis for Defendants now to assert that Dubric's evidence should be limited to harassment occurring on May 27, 2015.

In the alternative, Defendants assert that Dubric should be precluded from presenting evidence pertaining to claimed events which occurred more than 300 days prior to her EEOC filing. Under Title VII, a charge of discrimination initially filed with a state or local agency must

be filed with the EEOC within 300 days after the allegedly unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). However,

> [i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). Here, there is no argument that Dubric's filings with NERC and the EEOC were not timely. Therefore, Dubric need not be broadly precluded from introducing of evidence of "acts contributing to her claims," even if those acts occurred outside the 300-day filing window. Of course, these "contributing" acts must be relevant to her present claims and must not simply constitute impermissible character evidence or evidence of Defendants' prior bad acts.

With that said, the Court denies the motion.

### j. Defendants' Eighth Motion in Limine (ECF No. 49 at 10–11)

Lastly, Defendants take one more shot to exclude all evidence of Dubric's damages based on her failure to disclose a computation under Rule 26. The Court has already ruled, *supra*, that Dubric may introduce evidence of lost wage damages, but only to the extent such damages are based on earnings from her employment at A Cab. Nonetheless, Dubric concedes that she failed to disclose a computation of economic damages; therefore, all other evidence of economic damages—with the exception of lost wages based on earnings at A Cab—will be excluded.

In addition, Dubric may introduce evidence of emotional distress damages, but must rely wholly on the jury to determine the appropriate amount of such damages, and may not offer the jury a calculation. *See, e.g., Williams v. Trader Publishing Co.*, 218 F.3d 481, 486 n. 3 (5th Cir. 2000) ("Since compensatory damages for emotional distress are necessarily vague and are

generally considered a fact issue for the jury, they may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(C)."); *see also Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 593 (D. Nev. 2011) ("Rule 26(a)(1)(A)(iii) does not require a computation of general damages for pain and suffering or emotional distress because such damages are subjective and do not lend themselves to computation."); *Crocker v. Sky View Christian Acad.*, No. 3:08-cv-00479-LRH, 2009 WL 77456, at *2 (D. Nev. Jan. 8, 2009) ("Indeed, because emotional suffering is personal and difficult to quantify, damages for emotional anguish likely will be established predominantly through the plaintiffs' testimony concerning the emotional suffering they experienced, not through the type of documentary evidence or expert opinion relied upon to make a Rule 26(a)(1)(A)(iii) disclosure of a computation of damages."); *Creswell v. HCAL Corp.*, No. 04-cv-388-BTM, 2007 WL 628036 at *2 (S.D. Cal. Feb. 12, 2007) ("While Rule 26 generally requires a party to provide a computation of such damages, emotional damages, because of their vague and unspecific nature, are oftentimes not readily amenable to computation.").

        Accordingly, the Court grants the motion in part and denies it in part.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's first motion in limine (ECF No. 46) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's second motion in limine (ECF No. 47) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's third motion in limine (ECF No. 48) is GRANTED.

IT IS FURTHER ORDERED that Defendants' motions in limine (ECF No. 49) are GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED February 16, 2017.

_____
ROBERT C. JONES
United States District Judge