**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JASMINKA DUBRIC,<br><br>        Plaintiff,<br><br>vs.<br><br>A CAB, LLC et al.,<br><br>        Defendants. | 2:15-cv-02136-RCJ-CWH<br><br>**ORDER** |

This Title VII employment discrimination case was tried to jury verdict on February 24, 2017. Now pending before the Court is Defendants' Motion for Attorney Fees. (ECF No. 96.) For the reasons given herein, the Court grants the motion in part.

**I.    FACTS AND PROCEDURAL BACKGROUND**

Plaintiff Jasminka Dubric ("Dubric") began working for Defendant A Cab, LLC ("A Cab") in June 2013. Dubric alleged that from the beginning of her employment until May 26, 2015, Defendant Creighton J. Nady ("Nady") "made comments about Plaintiff's appearance and body" and hugged and touched her without permission. (Compl. ¶ 10, ECF No. 1.) Dubric alleged that in February 2015, Nady "grabbed her face and forcefully kissed her on the mouth," (*Id.* at ¶ 12; Dubric Dep. 49:1–50:16, ECF No. 40-2), and that on May 26, 2015, Nady grabbed Dubric's arm, pulled her toward him, and attempted to kiss her on the lips; however, Nady ended up kissing only Dubric's cheek after she turned her head and pulled away, (Compl. ¶ 13; Dubric

Dep. 88:10–89:18). On or about May 27, 2015, A Cab demoted Dubric from road supervisor to taxi cab driver, and Dubric resigned. (Compl. ¶¶ 14–15.)

On November 6, 2015, Dubric filed this suit making three claims solely against A Cab: (1) sexual harassment—hostile work environment in violation of Title VII; (2) sexual harassment—quid pro quo in violation of Title VII; and (3) retaliation in violation of Title VII; and two claims against both A Cab and Nady: (1) intentional infliction of emotional distress; and (2) battery. In addition, Nady asserted a counterclaim against Dubric for defamation. On December 8, 2016, the Court denied Defendants' motion seeking defensive summary judgment on Dubric's claims and offensive summary judgment on Nady's counterclaim. (Order, ECF No. 42.)

At trial, following Dubric's case-in-chief, the Court partially granted Defendants' Rule 50 motion for judgment as a matter of law. The Court dismissed Dubric's Title VII claims of hostile work environment and retaliation. However, the Court declined to dismiss the claims of quid pro quo sexual harassment, intentional infliction of emotional distress, and battery. At the close of evidence, the Court further narrowed Dubric's claims, granting judgment in favor of A Cab—but not Nady—on the state law claims of intentional infliction of emotional distress and battery.

On February 24, 2017, the jury found against Dubric on all remaining claims. The jury also found against Nady on his counterclaim for defamation.

A Cab and Nady have now filed a motion for attorneys' fees under Section 706(k) of Title VII. (ECF No. 96.) Defendants seek recovery of $143,905.50 in fees to be distributed as follows: $86,397.50 to Rodriguez Law Offices, P.C. ("RLO"), $18,080.00 to Kamer Zucker Abbott ("KZA"), and $39,428.00 to Mace J. Yampolsky, Ltd. ("MJY"). (Mot. Att'y Fees 4, ECF No. 96.) These figures represent the total fees incurred in defense counsel's litigation of the case.

## II. LEGAL STANDARDS

In a Title VII case, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee. . . ." 42 U.S.C. § 2000e–5(k). While successful plaintiffs in civil rights actions are awarded attorneys' fees as a matter of course, prevailing defendants are awarded fees only in "exceptional cases," lest plaintiffs with legitimate claims be deterred from filing suit. *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 968 (9th Cir. 2011). Accordingly, a prevailing defendant in a civil rights case is awarded attorneys' fees only if the court finds that the plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

"A case may be deemed frivolous only when the result is obvious or the arguments of error are wholly without merit." *Gibson v. Office of Att'y Gen., State of California*, 561 F.3d 920, 929 (9th Cir. 2009) (citations and punctuation omitted). Whether an action is frivolous, unreasonable, or without foundation must be determined on a claim-by-claim basis, *see Christiansburg*, 434 U.S. at 422, and only those fees incurred in defending against the frivolous, unreasonable, or groundless claims are recoverable. *Harris*, 631 F.3d at 971.

"The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). Accordingly, courts must avoid engaging in "*post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22.

## III. ANALYSIS

It will be helpful first to set the stage by clearing away some clutter. First, it is Title VII that authorizes an award of attorneys' fees in this case. Therefore, any claims outside the

umbrella of Title VII cannot support an award of attorneys' fees. Accordingly, any fees incurred in defending the claims of intentional infliction of emotional distress and battery or, of course, in pursuing the counterclaim of defamation cannot be awarded here. Second, as a technical matter, Dubric asserted her Title VII claims against A Cab only, and not Nady. Therefore, although the instant motion is brought by both Defendants, attorneys' fees may only be awarded, if at all, to A Cab. Although difficult to quantify, both of the foregoing considerations warrant some reduction in the total amount of fees sought by Defendants.

Accordingly, the Court's task here is to evaluate the three Title VII claims asserted against A Cab. If the Court finds that any claim was "frivolous, unreasonable, or groundless," it will award reasonable attorneys' fees to A Cab on that claim.

A superficial look at the procedural history of this case would suggest that an award of attorneys' fees is not appropriate. As an initial matter, the Ninth Circuit has implied that when a judge denies a defendant's motion for summary judgment the case is not frivolous because the judge apparently thought the plaintiff's case had enough merit to proceed to the next stage of litigation. *See Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1041 (9th Cir. 1990). Here, Defendants moved for summary judgment on Dubric's Title VII claims, and the Court denied the motion in its entirety. (Order, ECF No. 42.) The Ninth Circuit has also suggested that the mere fact a claim was submitted to a jury tends to indicate that the claim had some merit, because the Court opted not to dispose of the claim as a matter of law. *See Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir. 1985). One of Dubric's Title VII claims, for quid pro quo sexual harassment, was ultimately decided by jury verdict after the Court partially denied Defendants' Rule 50 motion.

Furthermore, the legal principles underlying the Court's decision to grant the Rule 50 motion on the other two Title VII claims—for hostile work environment and retaliation—do not necessarily suggest that those claims were frivolous. The Court dismissed the hostile work

environment claim because, after allowing Dubric to put on her full case, the evidence presented was not sufficient to establish the "severe and pervasive conduct" required by Ninth Circuit case law. However, that is not to say it was not a reasonably close question. The alleged kiss and attempted kiss are of the *kind* of acts that could plausibly support a claim of hostile work environment, and if the evidence had indicated that the alleged incidents of harassment were more severe, or more numerous, perhaps this claim would have survived the Rule 50 motion. However, the evidence actually presented at trial, that Nady kissed Dubric on one occasion and attempted to kiss her on another, simply did not rise to the level of a hostile work environment under Title VII.

Likewise, the retaliation claim was dismissed because Dubric did not present evidence that she had engaged in protected activity. Her theory was that the protected activity in this case was her physical resistance to Nady's advances. The Court ultimately disagreed that the mere physical refusal of a sexual advance constitutes protected activity under Title VII. However, the Court also noted that there was a circuit split on that very question. *See Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (holding that verbal refusal of sexual advances is "the most basic form of protected activity"); *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1067 (6th Cir. 2015) (affirming trial court which held protected activity "can be as simple as telling a supervisor to stop"); *but see LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007) (holding that merely rejecting sexual advances does not constitute protected activity for purposes of Title VII retaliation). In light of the circuit split, and in the apparent absence of applicable Ninth Circuit precedent, it cannot be said that Dubric's legal theory was unreasonable or obviously without merit, notwithstanding this Court's final decision to dismiss the retaliation claim.

///

However, the unique circumstances of this case warrant further consideration. Here, the Court cannot merely conclude that because Dubric's Title VII claims survived summary judgment, the claims were per se reasonable. In ruling on a motion under Rule 50(a) or Rule 56, courts are prohibited from weighing the evidence or considering the credibility of witnesses. *Kay v. Cessna Aircraft Co.*, 548 F.2d 1370, 1372 (9th Cir. 1977). "The evidence must be viewed in the light most favorable to the party against whom the judgment would be granted and all inferences must be drawn in that party's favor." *Id.* Accordingly, the Court was required to accept Dubric's evidence as true when ruling on both motions.

On a motion for attorneys' fees, therefore, the analysis is somewhat more complicated in a case of pure "he said, she said" like this one, where there were no witnesses to the alleged incidents of harassment and the dispute is essentially a matter of the plaintiff's word against the defendant's. One can easily imagine how an unscrupulous plaintiff might simply lie his way past summary judgment, all the way to a jury verdict, and then avoid paying his opponent's attorneys' fees, despite his bad faith, by virtue of the fact that the Court was unable to dispose of his claims as a matter of law. In such cases, courts should look beyond the motions for judgment as a matter of law to assess whether awarding attorneys' fees to a prevailing defendant will "fulfill the deterrent purposes of . . . 42 U.S.C. § 2000e–5(k)." *Miller v. Los Angeles Cty. Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987). This Court is sensitive to the need for restraint in requiring Title VII plaintiffs to pay their opponents' fees, based on the policy that plaintiffs with legitimate claims should not be deterred from filing suit. *Salley v. Truckee Meadows Water Auth.*, No. 3:12-cv-00306-RCJ, 2015 WL 1414038, at *3 (D. Nev. Mar. 27, 2015). This cautionary principle is arguably even more important in the "he said, she said" context, where a plaintiff with a valid Title VII claim may already be reluctant to file a complaint due to a lack of corroborating evidence. However, "[t]he other side of this coin is the fact that many defendants in Title VII

claims are small- and moderate-size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights." *Christiansburg*, 434 U.S. at 422 n.20.

With the foregoing in mind, therefore, the Court will award attorneys' fees to A Cab, not simply because Dubric's Title VII claims were unsuccessful, but because Dubric's case was based entirely on her own testimony, and the Court finds she lacked credibility. Her testimony at trial was contradicted in multiple respects by video and audio recordings, documentary evidence, and the testimony of several other witnesses, in particular Donna Burleson and Scott Dorsch, whom this Court found to be much more credible and forthcoming. Dubric also failed to adduce additional witnesses, including her own children and several coworkers, who, according to Dubric, had knowledge that would have corroborated her testimony. Furthermore, the verdict rendered in this case demonstrates that the jury reached the same conclusion as the Court—that Dubric's testimony was not believable.[1]

Therefore, this Court's determination that Dubric's case was premised on prevarications is sufficient to support an award of attorneys' fees. *See, e.g.*, *Carrion v. Yeshiva Univ.*, 535 F.2d 722, 728 (2d Cir. 1976); *Daramola v. Westinghouse Elec. Corp.*, 872 F. Supp. 1418, 1420 (W.D. Pa. 1995); *E.E.O.C. v. Kip's Big Boy, Inc.*, 424 F. Supp. 500, 503 (N.D. Tex. 1977). To the extent Ninth Circuit precedent suggests otherwise, it is easily distinguishable from the circumstances of this case. *See E.E.O.C. v. Bruno's Restaurant*, 13 F.3d 285, 290 (9th Cir. 1993). In *Bruno's Restaurant*, the Ninth Circuit ruled that an award of attorneys' fees was not proper

---

1 The jury's finding against Dubric on the claim of battery is especially telling. Common law battery requires only an intentional, unwanted, and offensive touching. *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 132 Nev. Adv. Op. 53, 376 P.3d 167, 171 (2016). Therefore, to find for Dubric, the jurors had only to conclude that Nady actually kissed her against her will. That the jurors did not so find strongly indicates that they did not think Dubric's testimony was truthful.

where it was based on the fact that plaintiff's witnesses were not credible, but only because the district court did not specifically find that the plaintiff "should have anticipated at the outset that none of its evidence of discriminatory conduct was credible." *Id.* Here, however, it was plaintiff's own testimony that lacked credibility; surely she knew from the outset of her case whether her own allegations were worthy of belief.

Finally, with respect to the reasonableness of the fees, the Court concludes that the fees, as sought, are excessive. Only reasonable fees are recoverable. *Cunningham v. County of Los Angeles*, 869 F.2d 427 (9th Cir. 1988). First, given their late engagement and minimal contribution to this case, the Court finds that the rates and hours billed by KZA are not reasonable. Accordingly, Mr. Kamer's rate will be reduced to $350 per hour—more in line with the rates charged by Ms. Rodriguez and Mr. Yampolsky, attorneys of similar stature and experience—and Ms. Sarafina's rate will be reduced to $225 per hour. Also, in light of the significant amount of time spent on familiarizing themselves with the case and preparing for trial (with which they did not actually assist), the total hours billed by KZA will be adjusted from 52 to 35. Furthermore, it is not reasonable that MJY, brought in as trial counsel at the eleventh hour, spent an average of over sixteen hours per day on billable activities for the eight consecutive days of their involvement in this case.[2] The Court agrees with Plaintiff's counsel that the inefficiency of MJY's late association should not be passed on to Ms. Dubric. Therefore, MJY's total hours billed will be adjusted from 149 to 90. The final calculation of MJY's billable hours must also be reduced by an additional $10,000 in fees already paid (which reduction is reflected in MJY's invoice). Lastly, as noted above, an overall reduction in the fees of all defense counsel

---

2 Indeed, perhaps it is not even possible. Notably, it appears Mr. Yampolsky personally reported 30.3 hours billed on February 17, 2017. Anyone who has ever remarked that there just aren't enough hours in the day should talk to Mr. Yampolsky. The Court seriously hopes that such irregularities are not a recurring feature of MJY's billing practices.

is required because a substantial portion of the fees were necessarily incurred in defending and pursuing non-Title VII claims.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' motion for attorneys' fees (ECF No. 96) is GRANTED IN PART. Consistent with the foregoing analysis, Defendant A Cab is hereby awarded reasonable attorneys' fees in the amount of $49,492.38.

IT IS SO ORDERED.

DATED: This 13th day of April, 2017.

_____
ROBERT C. JONES
United States District Judge